UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOCQUAI L. WAGNER,

                           Plaintiff,

-vs-

ANDREW M. SAUL, *Commissioner of Social Security*,[1]

                       Defendant.

DECISION AND ORDER

1:18-CV-195 CJS

---

## APPEARANCES

For Plaintiff:
    Amy C. Chambers, Esq.
    Kenneth R. Hiller, Esq.
    Law Offices of Kenneth Hiller, PPLC
    6000 North Bailey Avenue, Suite 1A
    Amherst, NY 14226
    (716) 564-3288

For the Commissioner:
    Blakely Pryor, Esq.
    Office of the General Counsel
    Social Security Administration
    601 E. 12th Street, Room 965
    Kansas City, MO 64106
    (816) 936-5785

    Daniella M. Calenzo, Esq.
    Social Security Administration
    Office of General Counsel
    26 Federal Plaza, Room 3904
    New York, NY 10278
    (212) 264-2579

    Susan Jane Reiss, Esq.
    Social Security Administration
    Office of General Counsel
    26 Federal Plaza Room 3904
    New York, NY 10278
    (212) 264-2524

---

[1] The president nominated Andrew M. Saul to be Commissioner of Social Security and the Senate confirmed his appointment on June 4, 2019. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

Dennis J. Canning, Esq.
Office of the General Counsel
Social Security Administration
601 E. 12th Street, Room 965
Kansas City, MO 64106
(816) 936-5830

## INTRODUCTION

**Siragusa, J.** Jocquai L. Wagner ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits. Presently before the Court is the Plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure, ECF No. 14, and the Commissioner's cross-motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c, ECF No. 20.) For the reasons set forth below, the Court grants Plaintiff's motion and remands this matter pursuant to the fourth sentence of 42 U.S.C. § 405(g) for a rehearing.

## PROCEDURAL HISTORY

On July 18, 2013, Plaintiff filed a claim for disability and disability insurance benefits as well as supplemental security income, alleging disability beginning on May 14, 2007. R. 18.[2] At the hearing, Plaintiff's representative amended the initial disability onset date to September 12, 2014. *Id*. The Social Security Administration denied his claims on October 2, 2013. Subsequently, on August 18, 2016, Plaintiff appeared before an Administrative Law Judge ("ALJ") for a hearing in Buffalo, New York, at which time a vocational expert (VE) also testified. Plaintiff was represented at the hearing. The ALJ issued a decision on December 2, 2016, in which he determined that Plaintiff "has the residual functional capacity to perform

---

[2] References to the transcript of the entire record of proceedings relating to this case will be abbreviated as "R." and the page number. ECF No. 9.

less than light work . . ." and that sufficient jobs existed in the national economy that Plaintiff can perform. Thus, the ALJ determined Plaintiff was not disabled.

Plaintiff appealed to the Social Security Administration's Appeals Council, which denied his request for an appeal on December 8, 2017. R. 1. He then commenced this action in the Western District of New York, Buffalo Division, on February 5, 2018. Complaint, ECF No. 1.

## THE ALJ'S DECISION

The ALJ applied the Commissioner's five-step sequential evaluation for adjudicating disability claims, 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2015, and had not engaged in any substantial gainful employment since September 12, 2014. At step two, the ALJ determined that Plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine. At step three, the ALJ determined that the impairment did not medically exceed the severity of one of the Commissioner's listed impairments.[3]

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform "less than light work." R. 22. The ALJ explained that Plaintiff could,

> lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently. He further could sit six hours in an eight-hour workday, stand six hours in an eight-hour workday and walk six hours in an eight-hour workday. The claimant could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He could occasionally balance, stoop or kneel, with no repetitive stooping, kneeling or crouching and he could never crawl. The claimant could

---

[3] "There is no evidence the claimant's degenerative disc disease results in motor loss or sensory loss and there is no evidence of positive findings on straight leg raise testing in both the sitting and supine positions. Musculoskeletal examination on May 9, 2016, showed tenderness on palpitation of the left paraspinal area and of the right paraspinal area, with limited range of motion. However, strength testing revealed normal strength and tone, normal hip Hexion and extension bilaterally and full strength and range of motion of the lower extremities, with no sensory deficits . . . ." R. 22.

> never work near unprotected heights or around moving, mechanical parts. Any time off task could be accommodated by normal work breaks.

R. 22. The ALJ arrived at his determination based on his review of the raw medical data and Plaintiff's statements. No medical professionals offered an opinion about how, if at all, Plaintiff's physical condition would affect his ability to sit, stand, push, pull, and so forth. R. 26. The ALJ determined that "[t]he medical record documents rather mild to moderate clinical and diagnostic abnormalities, with conservative treatment and no recommended spinal surgery, as to support the residual functional capacity stated in this decision." R. 24. For instance, where Plaintiff complained of pain that limited his abilities, the ALJ observed "[h]e complained of back pain that interfered with standing, sitting and walking (Exhibit 9F, 2). Musculoskeletal examination was nearly normal however." R. 24. The ALJ also interpreted Plaintiff's magnetic resonance imaging scan ("MRI") report and determined that it "showed some, but not severe abnormalities." R. 26. His conclusion does not discuss the radiologist's statement regarding the L4-L5 joint:

> There is a 3 mm broad-based herniation of the nucleus pulposus of the protrusion type effacing the thecal sac. There is facet arthropathy significant dorsal epidural fat. There is no bony canal stenosis. The combination of findings has narrowed the thecal sac to a dimension compatible with moderate to severe stenosis. There is mild proximal inferior foraminal encroachment of the undersurface of the left L4 nerve root.

R. 317. The reviewing radiologist, Gregg Feld, M.D., though, did not offer an opinion as to the effects, if any, of his findings on the MRI.

Throughout the record, Plaintiff has complained of pain levels well over five on a scale of ten. *See, e.g.,* R. 385 (November 9, 2015, report showing Plaintiff complained of back pain 10/10 and medication was not alleviating it). Plaintiff reported that physical therapy not only did not relieve his pain, but made it worse. R. 395 (November 4, 2015, physical therapy note stating, "Patient has attended PT 8 times from 8/7/15 to 11/4/15. Subjectively the patient

states worsening back pain and worsening functional mobility."). A physical therapist observed that Plaintiff could not don or doff his shoes and socks without pain. R. 395.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's disability determination only if it is not supported by "substantial evidence," or if the Commissioner committed legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends in this appeal that the ALJ "improperly used lay opinion to interpret bare medical findings and failed to further develop the record and close evidentiary gaps." Pl.'s Mem. of Law 14, Nov. 29, 2018, ECF No. 14-1. This, he contends, resulted in an RFC determination unsupported by substantial evidence. The Commissioner responds that the ALJ properly considered all the evidence in the Record to arrive at his RFC determination. Comm'r's Mem. of Law 15, Feb. 27, 2019, ECF No. 20-1.

A reoccurring issue in this district is whether the RFC determination must be based on a medical *opinion* as to the effects of a claimant's severe impairment on his ability to sit, stand, walk, etc., or if the RFC determination can be made after the ALJ reviews the medical evidence and a claimant's testimony. The ALJ relies heavily on the fact that Plaintiff received only conservative treatment for his symptoms and that no back surgery was recommended. The Commissioner cites to *Netter v. Astrue*, 272 F. App'x 54 (2d Cir. 2008) (summary order),

for the proposition that the ALJ properly considered the conservative nature of Plaintiff's treatment as an indication that he did not suffer from a disabling condition. In that case, the Second Circuit wrote:

> Moreover, because the district court relied on Dr. Regalla's conservative treatment regimen merely as additional evidence supporting the ALJ's determination rather than as "compelling" evidence sufficient in itself to overcome an "otherwise valid medical opinion," the district court did not impermissibly "substitute his own expertise or view of the medical proof for the treating physician's opinion," *Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000).

*Netter*, 272 F. App'x at 56. Since no medical opinions were contained in this Record, the issue decided by the Court of Appeals in *Netter* is not present here.

On the question of whether a medical opinion is necessary to support an RFC determination, the Second Circuit has stated:

> We have said more generally (and now repeat) that where we are "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," we will not "hesitate to remand for further findings or a clearer explanation for the decision." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). The automatic remand rule urged by Cichocki, however, goes far beyond this sensible practice. As already noted, the functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945 are only illustrative of the functions potentially relevant to an RFC assessment. Adopting a per se rule that these functions must be explicitly addressed on pain of remand (no matter how irrelevant or uncontested in the circumstances of a particular case) would thus not necessarily ensure that all relevant functions are considered. Any such rule in this Circuit, moreover, would put us at odds with sister Circuits who have recognized that an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms.

*Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). This Court, in a decision by the Honorable Frank P. Geraci, Chief District Judge, stated:

> Yet, an ALJ's examination of the medical record is not plenary: "[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue*, 2010

> WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2009)). The Commissioner reserves "the final responsibility for deciding these issues" related to RFC determinations, 20 C.F.R. § 404.1527(d)(2), but the Commissioner's responsibility in making these determinations is limited: "[W]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (quoting *Deskin*, 605 F. Supp. 2d at 912).

*Englert v. Colvin*, No. 15-CV-564-FPG, 2016 WL 3745854, at *4 (W.D.N.Y. July 8, 2016); *accord Kain v. Colvin*, No. 14-CV-650S, 2017 U.S. Dist. LEXIS 73595, at *8 (W.D.N.Y. May 14, 2017).

Here, it is plain that the ALJ interpreted the raw medical evidence to ascertain the effect of Plaintiff's severe impairment on his ability to sit, stand, lift, carry, push, pull, *etc*. The Court is especially troubled by the ALJ's interpretation of the MRI report. Nothing Dr. Feld wrote obviously leads to the conclusion the ALJ drew from that report. The ALJ could have inquired of the physicians, asking their opinions on how their findings would affect Plaintiff's ability to walk, sit, stand, *etc.*, but he did not do so, despite having the duty to fully develop the record. The ALJ makes only a *pro forma* credibility determination using boilerplate language as to Plaintiff's assertions of severe pain. *See*, R. 24 ("the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.").

The ALJ was required by the Commissioner's ruling to "explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions." SSR 16-3p (Mar. 28,

2016, Federal Register Vol. 81, No. 51, page 14166; Corrected by Federal Register Vol. 81, No. 57, page 15776; Revised by Federal Register Vol. 82, No. 205, page 49462). As the Second Circuit observed in *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751 (2d Cir. 1982):

> A claimant's testimony about pain and suffering "is not only probative on the issue of disability, but 'may serve as the basis for establishing disability, even when such pain is unaccompanied by positive clinical findings or other "objective" medical evidence. . . .'" *Hankerson, supra*, 636 F.2d at 895 (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). Accord, *Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir. 1981).

*Echevarria*, 685 F.2d at 755. Plaintiff testified before the ALJ that "[t]he sitting is excruciating pain, stabbing pain, burning pain. The standing is—it bothers my lower legs, thighs area, and my back as well. It's stabbing. It's like my legs get weak." R. 45. Plaintiff also testified he could only stand up to ten minutes and sit for up to ten minutes. "I can't sit for long, I can't stand for long. I have to lay down in between all that." R. 45. Additionally, he testified he could not attend his stepfather's funeral in Birmingham because of the sitting required for travel. R. 48. He further testified that it was "hard for [him]...to concentrate on what [he's] trying to do when [his] back is—[he's] in excruciating pain," and that the pain is in his lower back. R. 50.

The ALJ's only explanation for discounting Plaintiff's pain complaints were that his "[m]usculoskeletal examination was nearly normal . . . ." R. 24. In that portion of his decision, the ALJ was referring to a September 12, 2014, examination by Aasha Harish, M.D., and Scott Stewart, M.D. R. 373. The doctors' musculoskeletal examination of Plaintiff resulted in the following findings:

> Gait and station: Normal. Normal gait, normal tip toe, normal heel walking. Inspection/palpation of digits and nails: Normal without clubbing or cyanosls. Inspection/palpation of joints, bones, and muscles: Normal. No joint swelling. Range of motion: Abnormal. (positive straight leg test left leg) Range of Motion: normal. Upper Extremities: normal ROM. Lower Extremities: normal ROM. Spine: normal ROM.

> Stability: Normal.
> Muscle strength/tone: Normal.

R. 372. However, the doctors' assessment of Plaintiff's lumbar radiculopathy consisted of the following: "patient complaining of b/l radicular pain. [W]ill get MRI of lumbar/sacral spine. [W]ill get physical therapy referral. [N]aproxen for back pain. Will reassess in 8–10 weeks." R. 372. Notwithstanding what the ALJ determined was a "nearly normal" musculoskeletal examination, the doctors ordered an MRI, a physical therapy referral, and naproxen for his pain.

An assessment by Elizabeth Hanretty, P.A., and Jafar W. Siddiqui, M.D., on February 18, 2016, resulted in the following report concerning examination of Plaintiff's back:

> Lumbasacral Appearance: normal appearance. No deformity, ecchyrnosis, erytherna or swelling noted. Palpation/Tenderness: Inspection/Palpate was abnormal. Tenderness on palpation of the LEFT: paraspinal. Tenderness on palpation of the RIGHT: paraspinal. ROM: Range of motion is limited Extension: was restricted, was painful. Strength Testing: strength and tone: normal hip flex ion and extension bilaterally.

R. 420. The ALJ correctly observed, no doctor has given an opinion on how, if at all, the medical findings affect Plaintiff's ability to sit, stand, walk, *etc*. However, since the Court finds that the ALJ here interpreted the raw medical evidence to determine Plaintiff's RFC, remand is required.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion and remands this matter pursuant to the fourth sentence of 42 U.S.C. § 405(g) for a rehearing.

DATED:	August 22, 2019
	Rochester, New York

> /s/ Charles J. Siragusa
> CHARLES J. SIRAGUSA
> United States District Judge